FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 07, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RONALD LAFOLLETTE,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 1:17-CV-03007-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

      Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 13 & 14. Mr. LaFollette brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C § 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set

forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Mr. LaFollette's Motion for Summary Judgment.

## I.     Jurisdiction

Mr. LaFollette filed his application for Supplemental Security Income on April 8, 2013. AR 22, 161-64. His alleged onset date of disability was amended at the hearing from October 19, 2000, to March 19, 2013. AR 22, 48. Mr. LaFollette's application was initially denied on June 17, 2013, AR 87-90, and on reconsideration on November 8, 2013, AR 102-04.

A hearing with Administrative Law Judge ("ALJ") M.J. Adams occurred on May 6, 2015. AR 45-63. On July 13, 2015, the ALJ issued a decision finding Mr. LaFollette ineligible for disability benefits. AR 22-40. The Appeals Council denied Mr. LaFollette's request for review on November 16, 2016, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

Mr. LaFollette timely filed the present action challenging the denial of benefits, on January 10, 2017. ECF No. 3. Accordingly, Mr. LaFollette's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.     Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

1  can be expected to last for a continuous period of not less than twelve months." 42

2  U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

3  under a disability only if the claimant's impairments are of such severity that the

4  claimant is not only unable to do his previous work, but cannot, considering

5  claimant's age, education, and work experience, engage in any other substantial

6  gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

7       The Commissioner has established a five-step sequential evaluation process

8  for determining whether a claimant is disabled within the meaning of the Social

9  Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

10  *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

11       Step one inquires whether the claimant is presently engaged in "substantial

12  gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful

13  activity is defined as significant physical or mental activities done or usually done

14  for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

15  substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§

16  404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

17       Step two asks whether the claimant has a severe impairment, or combination

18  of impairments, that significantly limits the claimant's physical or mental ability to

19  do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe

20  impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this

burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant Gallo in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.   Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Mr. LaFollette was 43 years old on the date the application was filed. AR 39, 65, 161. He has at least a high school education. AR 39, 221. Mr. LaFollette is able to communicate in English. AR 39. Mr. LaFollette has no past relevant work. AR 39, 72, 168-69. Mr. LaFollette has a history of using drugs. AR 24, 26, 31, 32, 370, 372, 388, 390, 392, 473.

## V. The ALJ's Findings

The ALJ determined that Mr. LaFollette was not under a disability within the meaning of the Act from April 8, 2013, the date the application was filed, through the date of the ALJ's decision. AR 22, 40.

**At step one**, the ALJ found that Mr. LaFollette had not engaged in substantial gainful activity since April 8, 2013 (citing 20 C.F.R. § 416.971 *et seq*.). AR 24.

**At step two**, the ALJ found Mr. LaFollette had the following severe impairments: Attention-deficit/hyperactivity disorder, post-traumatic stress disorder, major depressive disorder, and polysubstance dependence in sustained remission (citing 20 C.F.R. § 416.920(c)). AR 24.

At **step three**, the ALJ found that Mr. LaFollette did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 27.

**At step four**, the ALJ found Mr. LaFollette had the residual functional capacity to perform a full range of work at all exertional levels and retains the mental capacity to adequately perform the mental activities generally required by competitive remunerative work with the following limitations: he can perform simple, routine tasks and follow short, simple instructions; he can do work that needs little or no judgment and can perform simple duties that can be learned on

the job in a short period of less than thirty days; he can respond appropriately to supervision, co-workers and deal with the occasional changes in the work environment and has no difficulty dealing with the public. AR 29.

The ALJ determined that Mr. LaFollette does not have any past relevant work. AR 39.

**At step five**, the ALJ found that, in light of his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. AR 39. Such as, industrial cleaner, janitor, and hand packager. AR 40.

## VI.    Issues for Review

Mr. LaFollette argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) improperly discrediting Mr. LaFollette's subjective complaint testimony; (2)  improperly evaluating the lay witness testimony; (3) improperly evaluating the medical opinion evidence; and (4) failing to find Mr. LaFollette had severe physical impairments and improperly assessing his residual functional capacity.

\\

\\

\\

## VII.   Discussion

### A. The ALJ Properly Discounted Mr. LaFollette's Credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically

determinable impairments could reasonably be expected to produce the symptoms Mr. LaFollette alleges; however, the ALJ determined that Mr. LaFollette's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 30. The ALJ provided multiple clear and convincing reasons for discrediting Mr. LaFollette's subjective complaint testimony. AR 29-33.

In this case, there is substantial affirmative evidence of malingering. The ALJ noted Mr. LaFollette's description of his symptoms was so dramatic as to seem implausible during his psychological evaluation. AR 32, 33. Specifically, Dr. Cline stated that Mr. LaFollette's scores on the Rey and TOMM tests were not sufficient to rule out malingering. AR 391. Dr. Cline stated "[Mr. LaFollette] thus is given the diagnosis of malingering at this time and the following must be taken with great caution." *Id*. It was noted that "the presence of malingering confounds the ability to give a concise diagnosis at this time," his diagnosis included malingering, and the evaluation form was not completed due to malingering. AR 392-93, 395. The ALJ also noted that Mr. LaFollette presented impairments for the purpose of receiving prescription drugs. For example, when being seen at the walk-in clinic Mr. LaFollette declined anti-inflammatory drugs or Tylenol for his finger, but returned the next day asking for stronger medication and when he found out he would not receive any narcotics he threw the paper at the provider, swore, and left the clinic. AR 613. This affirmative evidence alone is sufficient to support a

negative credibility determination. *See Benton ex. el. Benton v. Barnhart,* 331 F.3d 1030, 1040 (9th Cir.2003) (finding of affirmative evidence of malingering will support a rejection of a claimant's testimony).

In addition to identifying malingering, the ALJ provided other specific, clear, and convincing reasons to reject Mr. LaFollette's credibility. AR 29-33. Including that Mr. LaFollette's activities did not support his allegations of total disability. AR 31-34. Such as working on cars, fixing small and large engines, raking the lawn, vacuuming, washing the laundry, shopping two to three times per week, going to church every Sunday, spending time with friends every two or three days, fishing, camping, and riding a bike. AR 24-25, 27-28, 30, 33. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Further, the ALJ detailed inconsistencies between Mr. LaFollette's allegations of total disability and the medical records demonstrating normal or mild findings. *See* AR 29-33. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r of Soc.*

*Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan*, 242 F.3d at 1148. The ALJ also noted frequent large gaps in treatment and improvement of Mr. LaFollette's symptoms when treatment was followed. *See* AR 30-31, 33. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ also noted the lack of work prior to the alleged onset date. AR 33. If an individual has shown little propensity to work throughout her lifetime, an ALJ may find her testimony that she cannot work now less credible. *Thomas*, 278 F.3d at 959.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). The Court does not find the ALJ erred when discounting Mr.

LaFollette's credibility because of the affirmative evidence of malingering and because the ALJ also properly provided multiple clear and convincing reasons for doing so.

**B. The ALJ Properly Evaluated the Lay Witness Testimony.**

**a. Reese Copeland, M.A.**

The opinion testimony of Mr. LaFollette's counselor, Reese Copeland, falls under the category of "other sources." "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

Mr. Copeland prepared a mental source statement in January 2015, that opined that Mr. LaFollette was moderately, markedly, or severely limited in nearly every category of mental functioning. AR 366-68. The ALJ considered the short check-box form filled out by Mr. Copeland but assigned it little weight. AR 36-37.

The ALJ assigned the statement little weight for three valid reasons. First, the checklist form contains multiple inconsistencies in alleged functioning limitations between closely related categories. AR 37. Second, the statement consists of a short unsupported checklist. *Id*. And third, the statement is quite conclusory, providing no explanation of the evidence relied on in forming the opinions and not supported by any documentation or objective clinical or diagnostic findings. *Id*. A discrepancy between even a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Additionally, "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id*. at 1216. Furthermore, check-box form statements may be given less weight when they are conclusory in nature and lack substantive medical findings to support them or they are inconsistent with the underlying medical records. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

The ALJ properly provided germane reasons for not fully crediting Mr. Copeland's statements. Accordingly, the Court finds the ALJ did not err in her consideration of Mr. Copeland's opinion.

### b. Marc Shellenberger

The opinion testimony of Mr. LaFollette's case manager, Marc Shellenberger, also falls under the category of "other sources." As stated above, an ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232. Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen*, 100 F.3d at 1467. An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill*, 12 F.3d 915.

Mr. Shellenberger prepared a mental residual functional capacity assessment form in February 2014, in which he opined that Mr. LaFollette was moderately limited in the majority of categories of mental functioning, and markedly limited in three categories of mental functioning. AR 363-65. The ALJ considered the short check-box form filled out by Mr. Shellenberger but assigned it little weight. AR 37-38.

The ALJ assigned the statement little weight for multiple valid reasons. The ALJ properly noted that the opinion appears to have relied very heavily on Mr. LaFollette's subjective complaints. AR 38. Indeed, Mr. Shellenberger specifically notes that the form was completed with Mr. LaFollette's input regarding the degree of limitation he experiences in each area. AR 365. An ALJ may discount even a

treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Additionally, the ALJ noted inconsistencies in the opinion, that the opinion consists merely of a short, conclusory, checklist that is not supported by any documentation or objective clinical or diagnostic findings, and Mr. Shellenberger did not have the benefit of reviewing other medical records. AR 38. A discrepancy between even a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. Additionally, "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id*. at 1216. Furthermore, check-box form statements may be given less weight when they are conclusory in nature and lack substantive medical findings to support them or they are inconsistent with the underlying medical records. *Batson*, 359 F.3d at 1195; *Garrison*, 759 F.3d at 1014.

The ALJ properly provided germane reasons for not fully crediting Mr. Shellenberger's statements. Accordingly, the Court finds the ALJ did not err in her consideration of Mr. Shellenberger's opinion.

\\

\\

\\

**C. The ALJ Properly Evaluated the Medical Opinion Evidence.**

**a. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id.* at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id.* at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than

his or his own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Dr. Aaron Burdge, Ph.D.

Dr. Burdge is a consultative physician who evaluated Mr. LaFollette once in 2013. AR 371-376. In March 2013, Dr. Burdge completed a psychological evaluation and opined that Mr. LaFollette was moderately, markedly, or severely limited in most categories of mental functioning. AR 373-74. Dr. Burdge also opined that job seeking assistance and training would minimize or eliminate barriers to employment. AR 374.

The ALJ did not completely discount this opinion, but assigned the opinion little weight. The ALJ discounted Dr. Burdge's opinion for multiple valid reasons. The opinion was authored on the alleged onset date; thus, as noted by the ALJ, Dr. Burdge did not have the benefit of reviewing the other medical reports or submissions contained in the record that were provided after. AR 35. Dr. Burdge was thus not able to take into account the longitudinal medical history and contrasting evidence in the record. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Additionally, the ALJ noted multiple inconsistencies within Dr. Burdge's own report and evaluations. AR 34. For example, Dr. Burdge opined that Mr.

LaFollette's limitations would persist even after 60 days of sobriety and will last

from 12 to 16 months even with treatment, but even though Dr. Burdge opined that

Mr. LaFollette was severely limited, he did not recommend a protective payee. AR

374. Additionally, Dr. Burdge opined that vocational training or job seeking

assistance would minimize or eliminate barriers to employment. *Id*. Furthermore,

while Dr. Burdge opined that Mr. LaFollette's has severe mental limitations, he

also noted that Mr. LaFollette's mental abilities "fell in the normal range," on the

more difficult Trials B test. AR 372. A discrepancy between a doctor's recorded

observations and opinions is a clear and convincing reason for not relying on the

doctor's opinion. *Bayliss*, 427 F.3d at 1216. "[T]he ALJ [who] is the final arbiter

with respect to resolving ambiguities in the medical evidence," reasonably

determined that, on balance, the objective findings did not support the limitations

Dr. Burdge assessed. *Tommasetti*, 533 F.3d at 1041.

When the ALJ presents a reasonable interpretation that is supported by the

evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853,

857. The Court "must uphold the ALJ's findings if they are supported by inferences

reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also*

*Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one

rational interpretation, one of which supports the ALJ's decision, the conclusion

must be upheld"). Thus, the Court finds the ALJ did not err in her consideration of Dr. Burdge's opinion.

### c.  Dr. Luci Carstens, Ph.D., P.S.

Dr. Carstens is a non-examining doctor who completed a one page review of medical evidence in March 2013. AR 390. Dr. Carstens opinion is limited and does not provide any functional limitations. *Id*. The opinion states that the reported limitations are partially supported by the medical evidence; the assigned severity of the limitations is consistent with the medical evidence; substance abuse does not contribute significantly to the functional impairments; and the duration and onset date are consistent with the medical evidence. *Id*. As noted by the ALJ, Dr. Carstens entire one page opinion appears to be based on Dr. Burdge's opinion.

The ALJ did not completely discount this opinion either but assigned Dr. Carstens' opinion little weight. AR 35-36. The ALJ discounted Dr. Burdge's opinion for multiple valid reasons. First, the ALJ noted that Dr. Carstens' opinion is not well supported at all, as it is apparently based entirely on Dr. Burdge's opinion that was properly assigned little weight. AR 36. Dr. Carstens herself notes that the reported impairments, and thus her brief opinion, are only partially supported by medical evidence. AR 36, 390. Dr. Carstens brief opinion is not well supported. AR 36. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d 595, 602-603. An ALJ

may reject the opinion of a non-examining doctor by reference to specific evidence in the medical record. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). Additionally, "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting Dr. Carstens' opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Carsten's opinion.

### d. Dr. Rebekah A. Cline, Psy.D.

Dr. Cline examined Mr. LaFollette in January 2015, and provided a psychological evaluation. AR 391-95. Dr. Cline opined that Mr. LaFollette had moderate or marked mental limitations in five categories and declined to rank severity in the other eight categories due to malingering. AR 393-95. Dr. Cline also

opined that a protective payee was recommended and vocational services would

not eliminate the barriers to employment. AR 394.

The ALJ did not completely discount this opinion, but assigned Dr. Cline's

opinion some weight. The ALJ discounted Dr. Cline's opinion for multiple valid

reasons. As noted in Dr. Cline's report, she did not have the benefit of reviewing

the other medical reports or submissions, or the longitudinal record; rather, she

reviewed only Dr. Burdge's report that was properly afforded little weight. AR 34,

391. Additionally, Dr. Cline only evaluated Mr. LaFollette on a single occasion

that was marred by malingering. AR 34, 391-95. Dr. Cline specifically noted that

the test scores were "not sufficient to rule out malingering," "the presence of

malingering confounds the ability to give a concise diagnosis at this time," and Dr.

Cline stated Mr. LaFollette "is given the diagnosis of malingering at this time and

the [opinion] must be taken with great caution." AR 391-95. Furthermore, Dr.

Cline's findings are incomplete and limited by the multiple sections and categories

she "did not assess due to malingering." AR 34, 391-95.

When the ALJ presents a reasonable interpretation that is supported by the

evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853,

857. The Court "must uphold the ALJ's findings if they are supported by inferences

reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also*

*Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one

rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting Dr. Cline's opinion, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in her consideration of Dr. Cline's opinion.

### e.  Dr. Christmas Covell, Ph.D.

Dr. Covell is a non-examining doctor who opined in June 2013, that Mr. LaFollette has mild to moderate mental limitations, but that his limitations would not lead him to be disabled. AR 65-73

The ALJ assigned great weight to Dr. Covell's opinion because she had the opportunity to view Mr. LaFollette's submissions and medical records before providing an opinion, she supported her opinions with citations to objective findings contained in the medical evidence of record, and she is familiar with the Social Security Administration program rules and regulations. AR 34.

Mr. LaFollette briefly contends that this opinion should not have been afforded great weight. However, Mr. LaFollette's disagreement with the weighing of the evidence does not establish error. Where the opinion of a non-treating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict. *Andrews*

*v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). It is the ALJ, and not the claimant, who is responsible for weighing the evidence for probity and credibility. *See Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas*, 278 F.3d at 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").

Thus, the Court finds the ALJ did not err in her consideration of Dr. Covell's opinion.

**D. The ALJ did not err in not finding that Mr. LaFollette had severe physical impairments and the ALJ properly assessed Mr. LaFollette's residual functional capacity.**

Mr. LaFollette briefly contends that the ALJ erred by not finding pain in his hand to be a severe impairment at step two of the five-step sequential evaluation process, and by not including additional, physical, limitations when assessing his residual functional capacity.

At step two in the five-step sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims." *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

Under step 2, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)). A diagnosis from an "acceptable medical source," such as a licensed physician or certified psychologist, is necessary to establish a medically determinable impairment. 20 C.F.R. § 404.1513(d). Importantly however, a diagnosis itself does not equate to a finding of severity. *Edlund*, 253 F.3d at 1159-60 (plaintiff has the burden of proving this impairment or their symptoms affect her ability to perform basic work activities); *see also Mcleod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Mr. LaFollette argues that the ALJ should have found he had severe right hand pain because of his complaint of pain and an objective finding of deformity.

However, Mr. LaFollette does not allege that his hand pain would have more than

a minimal effect on his ability to work. Additionally, while Mr. LaFollette

complained of pain in December 2014, he also in December 2014, declined anti-

inflammatory drugs or Tylenol for his finger, but returned the next day asking for

stronger medication and when he found out he would not receive any narcotics he

threw the paper at the provider, swore, and left the clinic. AR 613. In February

2015, Mr. LaFollette describes his symptoms as moderate and stable, and there is

no indication of further medical records documenting any remaining pain. AR 606-

07. Furthermore, in August 2014, the record includes a note of a deformity of the

finger upon exam, but that the range of motion is normal, motor strength is normal,

and sensation is intact. AR 624. In December 2014, it is noted that his hand is

negative for numbness, tingling, or weakness. AR 706. Mr. LaFollette has not

alleged or demonstrated that his hand pain would significantly limit his ability to

perform basic work activities, or that it meets the 12 month durational requirement

set forth in 20 C.F.R. §§ 404.1509 and 416.909.

Furthermore, because Mr. LaFollette was found to have at least one severe

impairment, this case was not resolved at step two. Accordingly, the ALJ did not

err in evaluating Mr. LaFollette's physical impairments at step two.

Next, Mr. LaFollette contends that the ALJ erred by not including

additional, physical, limitations when assessing his residual functional capacity.

However, the ALJ specifically noted that she considered *all symptoms* in assessing the residual functional capacity. AR 29 (emphasis added). Additionally, while Mr. LaFollette contends that the ALJ should have included additional physical limitations, he does not state what limitations he suffers or point to any assessed limitations from any medical source as a result of back, knee, shoulder, or hand conditions. An alleged impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques and must be established by medical evidence not only by a plaintiff's statements regarding his symptoms. 20 C.F.R. §§ 404.1508, 416.908.

Here, the ALJ's residual functional capacity findings properly incorporated the limitations identified by medical and other sources. Thus, the ALJ properly assessed Mr. LaFollette's residual functional capacity.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be

**CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 7th day of February, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge